(77 Misc. Rep. 565.)

MANHATTAN COMMERCIAL CO. v. WILLIAM E. LEUCHTENBERG CO. et al.

(City Court of New York, Special Term.  September 6, 1912.)

1. ARREST (§ 8*)—CORPORATIONS—OFFICERS—CONVERSION.

The president of a corporation, who manages its affairs, obtains credit for the corporation on the assets, converts the assets, makes false statements, and falsifies his accounts as to merchandise returned from customers, which he denies, becomes personally liable for conversion, and an order of arrest would lie.

[Ed. Note.—For other cases, see Arrest, Cent. Dig. §§ 16–18, 19; Dec. Dig. § 8.*]

2. ARREST (§ 27*)—AFFIDAVITS—LETTERS AND DOCUMENTS—INFORMATION AND BELIEF.

An order of arrest cannot be granted on affidavits alleging facts upon information and belief, without stating the source, and, if verified from documents or letters, they should be set out in full, or copies be presented with the application; but these omissions may be supplied nunc pro tunc, under Code Civ. Proc. § 768, as amended by Laws 1911, c. 763, providing that, on motions to set aside orders, technical insufficiencies may be supplied nunc pro tunc, when not prejudicial.

[Ed. Note.—For other cases, see Arrest, Cent. Dig. §§ 54–55½; Dec. Dig. § 27.*]

Action by the Manhattan Commercial Company against the William E. Leuchtenberg Company and William E. Leuchtenberg.  On motion to vacate an order of arrest issued against William E. Leuchtenberg.  Motion denied conditionally.

Max Brown, of New York City, for the motion.
I. Gainsburg, of New York City, opposed.

FINELITE, J.  The defendant William E. Leuchtenberg moves individually to vacate the order of arrest heretofore issued against him by one of the justices of this court upon the grounds, first, that there is no provision of law which gives the court the right to arrest an officer of a corporation in a civil action; second, that section 548 of the Code of Civil Procedure expressly prohibits the arrest of any person in a civil action or special proceeding, except as prescribed by the statute.

The action is brought against the defendant and against the William E. Leuchtenberg Company, a corporation, to recover the sum of $1,-754.28 for the conversion of personal property.  It appears from the facts herein that heretofore, and on the 7th day of June, 1912, the said defendant William E. Leuchtenberg, on behalf of the defendant corporation and with due authority in him, made and executed a cer-

tain agreement in writing whereby the said defendant corporation sold, assigned, transferred, and set over unto the plaintiff herein all of its outstanding accounts created in its business by the sale and delivery of its merchandise to its customers, and also sold, assigned, transferred, and set over unto this plaintiff all of the merchandise constituting the said accounts; and this plaintiff agreed to advance to the said defendant corporation upon the security of the said accounts 75 per cent. of the net face value of the said accounts so transferred by it upon the terms and conditions of the said agreement. By said agreement, and also by folio 5 of the original affidavit, it appears that it was further understood and agreed by the terms of the said agreement that the plaintiff shall charge 2½ per cent. commissions on the accounts so assigned to and accepted by it for its services rendered under the said agreement and interest upon the moneys so advanced at the rate of 6 per cent. per annum, and that the plaintiff shall charge the defendant corporation for its expenses and disbursements incurred in the collections of the said outstanding accounts, and that the plaintiff shall (folio 6) reimburse itself for all of the foregoing advances, charges, interest, commissions, and expenses out of the collections made by it on the accounts so assigned and transferred to it, and shall return the balance, if any, by way of surplus to the said defendant corporation herein. It was further understood and agreed in and by the terms of the said agreement that, in case any of the accounts so assigned to and accepted by the plaintiff shall be and remain unpaid (folio 7) for a period of ten days after the maturity thereof, the defendant corporation shall pay to the plaintiff upon demand the face amount of the said accounts so remaining unpaid, and the plaintiff agreed to reassign and retransfer such accounts so remaining unpaid to the defendant corporation; that it was distinctly understood and agreed in and by the terms of the said agreement that, should any of the debtors whose accounts are so assigned to this plaintiff return any of the merchandise constituting the said accounts or send any remittances direct to the defendant corporation herein, the defendant corporation (folio 8) and the defendant William E. Leuchtenberg, as president and treasurer of the said defendant corporation, would receive the said merchandise and the said remittances in trust for this plaintiff, who was the sole owner thereof, and would forthwith and immediately upon the receipt thereof turn over and deliver and surrender the same to the said plaintiff as such owner; that the said defendants distinctly stated and represented in the said agreement of assignment that the goods constituting the accounts so assigned were actually shipped to the customers of the defendant corporation herein, that they were bona fide accounts, and that there were no offsets or counterclaims thereto; that thereupon, and after the execution of the said agreement, referred to as "Exhibit A," annexed to the moving papers (folio 9), another agreement was made and entered into between the plaintiff and the defendant corporation herein, through its duly authorized officer, the defendant William E. Leuchtenberg, as president and treasurer, dated the 20th day of June, 1912, wherein and whereby, among other things, it was

agreed that the defendants shall submit to the plaintiff orders received by them from their customers, and upon the approval thereof by this plaintiff (folio 10) the plaintiff agreed to pay for the merchandise in the hands of the custom house officials, obtain possession thereof, and thereby become the owner of the said merchandise, and permit the defendants herein to fill such orders so approved by this plaintiff with said merchandise, and simultaneously therewith the defendants agreed to transfer and assign the accounts thus created to the plaintiff herein; that, simultaneously with the delivery of the said merchandise to the defendants, the defendants herein agreed to turn over the original and duplicate invoices to this plaintiff, together with the shipping receipts and a copy of the assignment of such accounts so created, pursuant to the terms of the agreement as appears from Plaintiff's Exhibit A (folio 11), with full power in the said plaintiff to collect the said accounts; that upon the collection of such accounts the plaintiff should reimburse itself for the payments made to the custom house, plus the storage and other charges which may be incurred therein, all of which indebtedness was evidenced by the note of the defendants; that the defendants herein distinctly stated and represented in and by the terms of the said agreement that all orders submitted by the defendants to the plaintiff were actually received by them from their customers, that the said customers (folio 12) were of sound financial standing, that they were bona fide orders for goods actually to be shipped to such customers, that all shipping receipts so to be turned over to the plaintiff were actually received for the delivery of the said merchandise, that they are bona fide receipts actually received from the companies carrying such merchandise to their customers, that the accounts thus created are actually owing for goods sold and actually delivered to such customers, and that in case any remittances should be received (folio 13) by the defendants and merchandise should be returned to them that they will receive the same in trust for the plaintiff herein, and will forthwith and at once turn over and deliver the identical remittances and the identical merchandise to the plaintiff, who at all times remained the sole and absolute owner thereof and had sole right, title and interest therein; that pursuant to the said agreements the defendant corporation, through the defendant William E. Leuchtenberg, as its president and treasurer, who had the sole charge of the said business and the management and control thereof, and who was duly authorized so to do, duly sold, assigned, transferred, and set over unto this plaintiff certain of the outstanding accounts of the said defendant corporation (folio 14) created in its business, aggregating a total of the sum of $3,362.40; that this plaintiff advanced upon the security of the said accounts to the defendant corporation herein, through the defendant William E. Leuchtenberg, the sum of $2,866.68; that the interest on the said moneys so advanced pursuant to the terms of the said agreement amounted to the sum of $23.63; that the commissions are $86.30, that the disbursements incurred by the plaintiff for postage amounted to the sum of $13.30, that the expenses incurred by the plaintiff for printing bills amounted to the sum of $3.75, and that the

bank exchanges amounted to the sum of 89 cents making a total of moneys disbursed by the plaintiff aggregating the sum of $2,994.28; that this plaintiff collected down to the present date (folio 15) on the accounts so assigned and transferred to it the aggregate sum of $1,-240, thereby creating a deficiency in the sum of $1,754.28, with the interest thereon from the 20th day of August, 1912; that in the course of the collection of the said accounts the plaintiff ascertained that a number of the customers of the defendant corporation had remitted direct to it (folio 16); that a number of others had returned the merchandise direct to the said defendant corporation, and from others plaintiff ascertained that the goods had never been shipped to them, and in fact no account had ever been created, and that the defendants herein submitted certain alleged orders for the deliveries of merchandise, which they stated and represented were bona fide orders received from their customers, and that the plaintiff, in reliance upon such statements and believing the same to be true, and induced thereby, obtained sufficient merchandise to fill such orders from the custom house by paying the purchase price therefor, plus the duty and other charges therefor, and (folio 17) that thereafter this plaintiff ascertained that the said orders were not bona fide orders, had never been received by the defendants from their customers, that they were "fake" (intended thereby to mean "false") orders, and the defendants falsely and fraudulently made false and fraudulent statements and representations to this plaintiff, who, relying thereon and believing the same to be true and so induced thereby, delivered possession of the said merchandise to the defendants herein, who received and retained the same and still retain the same, and they have unlawfully and wrongfully converted the same to their own use and benefit and did not ship the same, nor any part thereof, to such alleged customers; that the plaintiff notified the defendants herein of the foregoing facts, exhibiting to them the letters and correspondence received from such alleged debtors, and (folio 18) the said defendant William E. Leuchtenberg admitted to plaintiff's representative, Sidney Simon, as appears from his affidavit on which the order of arrest was granted, that he had received the said merchandise returned by the customers, that he had received the remittances from others and that he had not shipped goods to some of them, as stated herein; that (folio 19) when said plaintiff corporation, through its officers, demanded the return of the said merchandise and the said remittances from the defendants herein, the defendant William E. Leuchtenberg stated that he did not have the money at that time, that he would endeavor to get the same and would straighten out the matter.

Plaintiff shows by its affidavits that the said defendants have wrongfully and unlawfully defrauded this plaintiff, in that they have falsely, knowingly, and unlawfully, and (folio 20) with intent to deceive and defraud this plaintiff, failed to ship the said merchandise to the customers whose accounts were transferred and assigned to this plaintiff, and that they have falsely and fraudulently, unlawfully, and knowingly stated and represented that they had shipped such merchandise, when as a matter of fact and in truth they never shipped

the same. The plaintiff mentions two different firms who claim that they have paid direct to defendants, and the defendants admitted they have received and retained the remittances and merchandise belonging to the plaintiff under the agreements; that (folio 23) the said defendants failed to notify the plaintiff or any of its representatives of the fact of such retention; that the plaintiff corporation, through its officers, made numerous demands upon the defendants for the recovery of the said merchandise and the remittances, but said defendants refused to comply with such requests.

[1] From the reading of the complaint and the affidavits on which the order of arrest was granted the question arises: Have sufficient facts been alleged wherein the said William E. Leuchtenberg, individually and on behalf of the corporation, converted the assets and merchandise so received and collected by him to his own use? In Phillips et al. v. Wortendyke, 31 Hun, 192, an action was brought against the defendant, as president of a corporation, who had the management of its business affairs, made statements of its affairs, which were false in fact, for the purpose of obtaining credit on its behalf. An order of arrest was obtained against him, and a motion to vacate the order of arrest was made solely upon the affidavit on which the same was granted. Therein the court held that "in such a case the averments of fact contained in the affidavit and the fair inferences to be drawn therefrom, must be deemed to be conceded as true for the purposes of the motion," and refused to vacate the order of arrest, further holding that "where a president of a corporation makes false statements of its affairs for the purpose of obtaining credit on its behalf, he becomes personally liable for the consequence of the fraud which he thus commits, and, in an action brought by the person injured, an order for the arrest of the president of the corporation, personally, may properly be granted." Although this case is not exactly in point to the issues involved on the motion before me, it is nevertheless analogous to the questions involved herein; that is to say, the president of a corporation, who manages its affairs, and who obtains credit upon the assets and merchandise of a defendant corporation, converts the assets or merchandise to his own use, and makes false statements thereof, and further falsifies his accounts as to merchandise returned from customers, which he denies, and which is in fact true, as to the merchandise sold and returned by him and the false statement made thereon, he as such president becomes personally liable for conversion, and an order of arrest would lie. Nichols, Prac. vol. 2, § 972.

[2] It is true, as argued by defendant's counsel, that an order of arrest cannot be granted where affidavits are presented alleging facts upon information and belief, without setting forth the source of the information, or, if the information is verified from documents or letters, same should be set out in full, or copies thereof presented with the application. De Nierth v. Sidner, 25 How. Prac. 419. But from the examination of the moving affidavits the plaintiff, through its officer, does not allege all the facts in reference to the conversion of the assets and property of the plaintiff on information or belief. It

appears by folio 16 the complaint alleges "that the defendants herein submitted certain alleged orders for the deliveries of merchandise, which they stated and represented were bona fide orders received from their customers," etc., and at folio 19 of the moving affidavit:

"That your deponent on behalf of the plaintiff corporation herein duly demanded the return of the said merchandise and the said remittances from the defendants herein, but the defendant William E. Leuchtenberg stated that he did not have the money at that time, and that he would endeavor to get the same, and would straighten out the matter. That the said defendants have unlawfully and wrongfully retained the said merchandise and the said moneys, and have converted the same to their own use and benefit, to the damage of this plaintiff. That the said defendants have wrongfully and unlawfully defrauded this plaintiff, in that they have falsely, knowingly, and unlawfully, and (folio 20) with intent to deceive and defraud this plaintiff, failed to ship the said merchandise to the customers whose accounts were transferred and assigned to this plaintiff, and that they have falsely and fraudulently, unlawfully, and knowingly stated and represented that they had shipped such merchandise, when as a matter of fact and in truth they never shipped the same, and further allege that the defendants herein acted with a preconceived idea to cheat and defraud the plaintiff out of its moneys. That (folio 24) the foregoing facts were obtained from correspondence had with the debtors of the above-named defendant corporation and also from conversations had with William E. Leuchtenberg, one of the defendants herein, himself, who admitted the receipt and retention of the aforesaid merchandise and moneys, and stated that he had not the money to pay for same, that he would borrow money and would pay your deponent's firm what he owed to it."

The above, as quoted from the moving affidavit, is a direct, positive averment as to the admissions only. But the plaintiff alleges that the information received of the retention of the merchandise was had from correspondence had by letters from defendants' customers and others. This information being based upon documents, the original or copies thereof should be annexed or supplied. Under section 768 of the Code of Civil Procedure, amended by Laws 1911, c. 763—

" *  *  *  Whenever a motion is made to vacate or set aside an order *  *  *  because of technical defects therein, or because of defects or insufficiency in the papers or proceedings upon which it was made or entered, and such defects or deficiencies can without prejudice to intervening rights be cured or supplied, it shall be the duty of the court to direct upon the hearing of such motion that such defects or insufficiencies in the order  *  *  *  be cured or supplied nunc pro tunc.  *  *  * "

Under this section of the Code the court must allow the plaintiff to supply the deficiencies or omissions; that is, the correspondence, letters, and documents from which plaintiff received the information as to the retention of the property and assets which rightfully belong to the plaintiff herein.

Upon such letters, documents, and correspondence being submitted to the court, duly authenticated, as provided by the Code of Civil Procedure, the motion to vacate the order of arrest will be denied, the same to be submitted on or before the 20th day of December, 1912; otherwise, the motion will be granted.